IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| DREAM KITCHEN & BATH SHOP, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>KITCHEN AND BATH SHOP, LLC, et al.,<br><br>    Defendants. | Case No. 2:22-cv-184 |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the defendants' motion to dismiss, or in the alternative, to transfer venue. ECF Nos. 19 (motion), 20 (memorandum). For the reasons stated below, the Motion to Dismiss is **GRANTED IN PART**. Counts One, Two, Four, Five, and Six are **DISMISSED** for failure to state a claim; Count Three is **DISMISSED** for lack of subject-matter jurisdiction; and the motion in the alternative to transfer is **DENIED AS MOOT**. The Plaintiff's oral motion for leave to amend the complaint is **GRANTED**.

**I.    BACKGROUND**

At this stage, the Court assumes the facts alleged in the complaint are true. This case involves a business dispute between two kitchen and bath renovation companies that were formerly affiliated with a common corporate entity. The plaintiff company separated in 2020 from a franchised kitchen and bath renovation company (ECF No. 1 ¶ 10) called Kitchen Bath Shop Virginia Beach (ECF No. 1-1)

and rebranded as Dream Kitchen & Bath Shop ("Dream Kitchen") (ECF No. 1 ¶ 12). Some unknown time later, Defendant Panah Ibrahimov acquired Defendant Kitchen and Bath Shop, LLC ("Kitchen and Bath"), which appears to have been another affiliate of Dream Kitchen's former parent company. *Id.* ¶ 14.

Dream Kitchen claims that Defendants Ibrahimov and Kitchen and Bath, along with MZ Digital Marketing, LLC[1] ("MZ") (whose role is never explained in the complaint) conspired to steal business from Dream Kitchen by accessing Dream Kitchen's business email account and Google Business account (*id.* ¶¶ 17, 20), redirecting the plaintiff's emails (*id.* ¶ 17), and copying the plaintiff's online customer testimonials (*id.* ¶ 19). Dream Kitchen claims it confronted Defendant Ibrahimov about the alleged email seizures and that Defendant Ibrahimov said he would only give back control of the email account if Dream Kitchen agreed to stop using the phrase "kitchen and bath shop," which, the plaintiff alleges, Defendant Ibrahimov falsely claimed was a registered trademark. (*Id.* ¶ 20; ECF No. 1-3)

Dream Kitchen brought six claims: (1) violation of the federal Computer Fraud and Abuse Act, (2) false advertising in violation of the Lanham Act, (3) violation of the Virginia Computer Crimes Act, (4) tortious interference with business expectancy, (5) Virginia statutory conspiracy to injure Dream Kitchen's business, and (6) Virginia common law conspiracy. Defendants Ibrahimov and Kitchen and Bath filed a motion to dismiss all six counts for failure to state a claim

---

[1] On June 9, 2023, the Court dismissed MZ as a defendant, without prejudice. ECF No. 36.

or to transfer the case to the United States District Court for the Eastern District of Virginia, Alexandria Division.

On June 13, 2023, the Court held a hearing on the instant motion. ECF No. 37. The matter is now ripe for disposition.

## II. LEGAL STANDARD

When a defendant moves to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6), the court must determine whether the plaintiff's complaint "alleges sufficient facts to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts begin by "identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Then, courts determine whether the plaintiff has "provide[d] the grounds of [their] entitlement to relief" with more than a recital of the elements of the cause of action. *Iqbal*, 556 U.S. at 663; *Twombly*, at 545. The court's review is generally "limit[ed]" to the facts alleged in the complaint itself, which must be viewed "in the light most favorable to the plaintiff." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

## III. ANALYSIS

### A. Dream Kitchen Fails to State a Claim Under the Computer Fraud and Abuse Act.

18 U.S.C. § 1030(g) is "primarily a criminal statute designed to combat hacking." *WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 206 (4th Cir. 2012). Nevertheless, it provides a civil remedy to "any person who suffers damage or

loss by reason of a violation of [the Computer Fraud and Abuse Act]" ("CFAA"). 18 U.S.C. § 1030(g). To maintain a civil action, a CFAA plaintiff must allege all the elements of one of the crimes outlined in the statute, as well as one of the harms laid out in subsections (c)(4)(A)(I)–(V). The plaintiff's complaint cites "18 U.S.C. § 1030 et seq." without specifying the subsection of the statute on which it bases its theory of liability, or the subsection on which it bases its claim of harm. ECF No. 1 at 7. However, the language of the complaint closely tracks subsections (a)(2)(C) and (a)(4) as to liability and subsection (c)(4)(A)(I) as to harm. Without concluding that Dream Kitchen must proceed under any particular subsection, the Court observes that the approach most favorable to the plaintiff requires analyzing the pleadings with reference to the elements of subsections (a)(2)(C), (a)(4), and (c)(4)(A)(I). That is what the Court has done.

To state a claim under 18 U.S.C. § 1030(a)(2)(C), a plaintiff must show that the defendant "intentionally accesse[d] a computer without authorization or exceed[ed] authorized access, and thereby obtain[ed] . . . information from any protected computer. To state a claim under § 1030(a)(4), a plaintiff must show that the defendant "knowingly and with intent to defraud, accesse[d] a protected computer without authorization, or exceed[ed] authorized access, and by means of such conduct further[ed] the intended fraud and obtain[ed] anything of value."

The complaint makes a *prima facie* showing that the defendants "access[ed]," 18 U.S.C. §§ 1030(a)(2) and (a)(4), and "obtain[ed] information," *id.* (a)(2)(C), from "a protected computer," §§ 1030(a)(2)(C) and (a)(4), by alleging that the defendants

4

seized emails and copied customer testimonials using the Internet.[2] *See* ECF No. 1 ¶ 17 (emails), 19 (testimonials).

The complaint alleges the defendants' actions were "intentional," 18 U.S.C. § 1030(a)(2), and "knowing," *id.* at (a)(4), by asserting that Defendant Ibrahimov "responded" to being "confronted about the authorized seizing and control of Dream Kitchen's email" not by denying that he had control of Dream Kitchen's email account, but by saying that "he would only give back control of the email account when Dream Kitchen entered into" an agreement to discontinue use of the term "bath" and other related terms. ECF No. 1 ¶¶ 20, 30; ECF No. 1-3.

The complaint also asserts that the defendants "further[ed their] intended fraud," 18 U.S.C. § 1030(a)(4), by "reposting copied customer testimonials to Kitchen and Bath's own marketing platforms" (ECF No. 1 ¶ 19) and using the seized email account as leverage to try to extract a promise from the plaintiff (*id.* ¶¶ 20, 30; ECF No. 1-3).

However, Dream Kitchen's allegations that the defendants accessed its accounts "without authorization" or by "exceed[ing] authorized access"—an essential element under 18 U.S.C. § 1030(a)(2) and (a)(4)—are conclusory. *See* ECF

---

[2] A "protected computer" has several possible meanings within the CFAA, but the only one that could plausibly apply to the plaintiff's claims is a computer "which is used in or affecting interstate or foreign commerce or communication." *Id.* at (e)(2)(B). Courts in this district routinely find that internet-based business activities inherently affect interstate commerce. *See, e.g., Estes Forwarding Worldwide LLC v. Cuellar*, 239 F. Supp. 3d 918, 926–27 (E.D. Va. 2017) (denying a motion to dismiss a CFAA civil claim for lack of an interstate commerce nexus because the plaintiff's employee intranet "was connected to—and entirely contained within—the Internet").

No. 1 ¶¶ 20, 45 (calling the access "unauthorized"). The complaint does not say what is meant by "unauthorized"—and in the Fourth Circuit, that matters.

The Fourth Circuit has adopted "a narrow reading of the terms 'without authorization' and 'exceeds authorized access'" and "reject[ed] any interpretation that grounds CFAA liability on a cessation-of-agency theory." *WEC*, 687 F.3d at 206. Applying that rule, the court of appeals has found that a former employee who "accessed her corporate email account and company-issued Blackberry" after she no longer worked for the plaintiff-company had accessed the company's computer network "without authorization," *Tech Sys., Inc. v. Pyles*, 630 F. App'x 184, 186 (4th Cir. 2015), but that when an employee "uses his own username and password to access the information and then puts it to an impermissible use, his 'manner' of access remains valid," *WEC*, 687 F.3d at 205.

The complaint alleges that the Google Business account was "set up and operated by Dream Kitchen" (ECF No. 1 ¶ 21) and that the defendants "seize[d] control of" communications and digital marketing materials (*id.* ¶¶ 55, 59) and "redirected emails" from Dream Kitchen's "business email account" (*id.* ¶ 17). Conspicuously absent from the complaint is any allegation that the defendant obtained an unauthorized password, hacked into Dream Kitchen's accounts, or otherwise gained improper *access* to Dream Kitchen's data. Put differently, the complaint fails to differentiate this case from one in which the defendant "uses his own username and password to access the information." *WEC*, 687 F.3d at 205.

That omission stands out to the Court because the complaint *does* allege that Dream Kitchen and Defendant Kitchen and Bath were affiliated with the same corporate entity. *See* ECF No. 1 ¶¶ 12, 12, 14; ECF No. 1-1. The Court is not permitted to speculate as to whether the defendants obtained illicit access to a competitor's data, or whether they had *authorized* access to the relevant accounts and merely did with the information therein something Dream Kitchen did not like. *See Twombly*, 550 U.S. at 555. And while the Court is required to view the facts in the light most favorable to the plaintiff, the Court cannot create or reasonably infer temporal clarity in the complaint when none exists on its face.[3]

Because Dream Kitchen fails to make any allegation as to how or under what circumstances the defendants accessed its accounts, its CFAA claim could only survive if the Court were to infer an essential fact not included in the complaint—that the defendants did not have their own, lawfully obtained password. The Court is not permitted to make such an inference. *See Twombly*, 550 U.S. at 555.

Therefore, the complaint fails to state a facially plausible claim that could survive under the Fourth Circuit's interpretation of the CFAA. Count One is dismissed.

---

[3] If, for example, Defendant Ibrahimov accessed an account that was solely and exclusively under the control of the plaintiff, or if Defendant Ibrahimov previously had authorized access to the account but that access was revoked or terminated, such information would provide clarity that could bolster the plaintiff's claim that the defendant's access was unauthorized or, in the alternative, exceeded authorized access.

B. **Dream Kitchen Fails to State a Claim for False Advertising Under the Lanham Act.**

The Fourth Circuit has interpreted the elements of a false advertising claim under 15 U.S.C. § 1125:

> A plaintiff asserting a false advertising claim under the Lanham Act must establish that: (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015). The "false or misleading description of fact," *id.*, that the complaint alleges is Defendant Kitchen and Bath's use of "Dream Kitchen's customers' testimonials to advertise for another, competing business." ECF No. 1 ¶ 37–38. The plaintiff's allegations as to the other four elements are conclusory: "The use of the testimonials deceived and/or likely deceived the consuming public in a material way" (*id.* ¶ 39), "the testimonials were used in interstate commerce" (*id.* ¶ 40), and "as a direct and proximate cause of the copying and misuse of Dream Kitchen's customer's testimonials, Dream Kitchen has been damaged in an amount to be proven at trial" (*id.* ¶ 41).

Because "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss, *Iqbal*, 556 U.S. at 678, Dream Kitchen has not sufficiently stated a claim for relief under the Lanham Act. Count Two is dismissed.

C. **Dream Kitchen Adequately States a Claim Under the Virginia Computer Crimes Act.**

The Virginia Computer Crimes Act ("VCCA") creates a civil cause of action for "[a]ny person whose property or person is injured by reason of a violation of [the VCCA] or by any act of computer trespass set forth in subdivisions A 1 through A 8 of § 18.2-152.4 regardless of whether such act is committed with malicious intent." Va. Code § 18.2-152.12. As in Count One, Dream Kitchen does not specify in Count Three which statutory provision it is proceeding under. However, the language of the complaint almost identically tracks Va. Code § 18.2-152.4 (A)(1), (3), and (6). Out of an abundance of caution, the Court has analyzed the sufficiency of the pleadings under each of those subsections.

The Court concludes that the complaint adequately states a claim for relief under at least subsection (A)(3). Because this conclusion results in preserving Count Three, the Court declines to opine further on whether Dream Kitchen has stated a claim under any other subsection of the VCCA.

Va. Code § 18.2-152.4 (A)(3) makes it unlawful to "with malicious intent, or through intentionally deceptive means and without authority . . . alter, disable, or erase any computer data, computer programs or computer software."

The complaint alleges malicious intent by asserting that the defendants used their access to Dream Kitchen's email account as leverage to try to extract a promise from Dream Kitchen. ECF No. 1 ¶¶ 20, 30; ECF No. 1-3.

The Virginia Supreme Court has provided guidance on the meaning of "alter" within the statute, commenting in dicta that "[t]amper[ing] with [an] office

9

computer" by removing the password to make it "temporarily inaccessible" might violate the VCCA. *Viers v. Baker*, 298 Va. 553, 556–557 n. 1 (2020).

On its face, "redirect[ing] emails" (ECF No. 1 ¶ 17) requires "altering" data, Va. Code § 18.2-152.4 (A)(3). Furthermore, obtaining unauthorized access to an email account to "seize[] control of" and "intercept[] those communications" is somewhat analogous to tampering with a computer to make data "temporarily inaccessible," as the Virginia Supreme Court has indicated might be cognizable under the VCCA. *Viers*, 298 Va. at 556–557 n. 1.

Because the Fourth Circuit's requirement that the defendants' access itself (not just the manner of access) be illicit applies only to the federal Computer Fraud and Abuse Act, Dream Kitchen is not required to plead on this count that the defendants did not merely use their "own username and password to access the information." *WEC*, 687 F.3d at 205. Accordingly, the state-law claim can survive even though the federal claim (Count One) fails.[4]

Accordingly, the defendants' motion to dismiss Count Three is denied.

### D. Dream Kitchen Fails to State a Claim of Tortious Interference with Business Expectancy.

Under Virginia law, a claim for tortious interference with business expectancy requires the plaintiff to show the following:

---

[4] While "[r]ule 12(b)(6) does not countenance . . . dismissals based on a judge's belief of a complaint's factual allegations," *Neitzke v. Williams*, 490 U.S. 319, 327 (1989), the Court has doubts about whether Count Three can hold up to sharper scrutiny at a later stage of litigation; however, Dream Kitchen has at least made out a facially plausible claim under the VCAA. If Dream Kitchen elects to amend its complaint as to any of the claims under federal law, it may also amend as to Count Three.

> (1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) the defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued the relationship or realized the expectancy . . . (4) damage to plaintiff; and (5) that the defendant employed improper methods in causing the alleged interference.

*East West, LLC v. Rahman*, 873 F. Supp. 2d 721, 734–35 (E.D. Va. 2012) (internal citation and quotation marks omitted). Assuming without deciding that the complaint sufficiently alleges elements four and five,[5] Count Four fails because Dream Kitchen does not sufficiently allege a "business relationship or expectancy," 873 F. Supp. at 734, which defeats the first three elements.

The complaint does allege that "Dream Kitchen had a valid business relationship and/or expectancy with customers it was electronically communicating with, in particular with those customers that it had provided work projections and estimates," ECF No. 1 ¶ 49, but Virginia's tortious interference law "requires that a plaintiff plead a *specific* prospective economic advantage or business expectancy." *Gov't Emps. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 705 (E.D. Va. 2004) (emphasis added). "A general expectancy that consumers will purchase" from the plaintiff company "does not suffice." *Id.*; *see also Masco Contractor Services East, Inc. v. Beals*, 279 F. Supp. 2d 699, 709 (E.D. Va. 2003) (failure to allege a "specific, existing" "contract or relationship" is fatal to a tortious interference claim).

---

[5] As to damages, Dream Kitchen asserts it "has been damaged in an amount to be proven at trial," id. ¶ 52, and as to "improper methods," 873 F. Supp. at 735, Dream Kitchen claims the defendants redirected Dream Kitchen's email and stole Dream Kitchen's online reviews. ECF No. 1 ¶ 17–19.

In *Masco*, the plaintiff "list[ed] the names of various insulation manufacturers and other supplies" with which it alleged to have business expectancies but did not allege it had "had any existing business relationship with any of them in particular" and made "no mention of any particular contract." 279 F. Supp. 2d at 710. Dream Kitchen has provided even less. Its allegation of business relationships based on "provid[ing] work projections and estimates" to unnamed customers is clearly less than "a particular contract," and is thus insufficient.

Because Dream Kitchen failed to allege the "existence of a business relationship or expectancy," *East West*, 873 F. Supp. 2d at 734, it also fails to allege the defendants' "knowledge of [the] relationship or expectancy" or that "the plaintiff would have continued the relationship or realized the expectancy" absent the defendant's conduct. *Id*. Count Four is dismissed.

### E. Dream Kitchen Fails to State a Claim of Statutory Business Conspiracy.

Virginia Code § 18.2-499 provides, in relevant part, that "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of . . . willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever" shall be liable for business conspiracy. Section 18.2-450 creates a civil cause of action for "[a]ny person who shall be injured in his reputation, trade, business or profession by reason of a

12

violation of § 18.2-499."[6] *See also DAG Petroleum Suppliers, L.L.C. v. BP P.L.C.*, 268 F. App'x 236, 243 (4th Cir. 2008) (outlining three elements).

Courts in this district have consistently found that, to sustain a conspiracy claim, a plaintiff must allege a "preconceived plan and unity of design and purpose" and "concerted action" on the part of more than one party, because "common design is the essence of the conspiracy." *Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC*, 261 F. Supp. 2d 483, 499 (2003); *see also BHR Recovery Communities, Inc. v. Top Seek*, LLC, 355 F. Supp. 3d 416, 425 (E.D. Va. 2018) (dismissing a statutory conspiracy complaint that did not "clearly allege with whom [the defendant] conspired").

The complaint alleges that Defendants "Kitchen and Bath, Ibrahimov, and [MZ] mutually undertook to seize control of and misappropriate customer testimonials . . . customer communications . . . and digital marketing belonging to Dream Kitchen" and to "establish a business in direct competition with Dream

---

[6] The standard of proof at trial for a Virginia statutory business conspiracy claim is clear and convincing evidence. *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 108 F.3d 522, 526 (4th Cir. 1997). The defendant claims that a "heightened pleading standard" applies at this stage as well. ECF No. 20 at 8. That is incorrect: The plaintiff need only meet the *Twombly-Iqbal* plausibility standard to survive a motion to dismiss. *See Steele v. Goodman*, 382 F. Supp. 3d 403, 424 (E.D. Va. 2019) (denying a motion to dismiss a statutory business conspiracy claim under Va. Code §§ 18.2-499–450 because, even though the plaintiffs could not meet the "*ultimate* heightened pleading standard," they did meet "the plausibility standard applicable to [a] Rule 12(b)(6) motion") (emphasis added).

Kitchen for the purposes of using the seized and misappropriated information to injure Dream Kitchen." ECF No. 1 ¶ 55.[7]

"[A]n agent cannot conspire with its principal." *Michigan Mut. Ins. Co. v. Smoot*, 128 F.Supp.2d 917, 925 (E.D. Va. 2000); *see also Mician v. Catanzaro*, No. 2:17-cv-548, 2018 WL 2977398, at *5 (E.D. Va. June 13, 2018) ("a conspiracy action cannot lie where a principal and its agent . . . are alleged to conspire with one another"). Therefore, a common purpose between Defendants Ibrahimov and Kitchen and Bath cannot form the basis for Dream Kitchen's conspiracy claims. *See* ECF No. 1 ¶ 7 (identifying Ibrahimov as an agent of Kitchen and Bath); ECF No. 20 at 1 (Defendants Ibrahimov and Kitchen and Bath's memorandum in support of the Motion to Dismiss, admitting the same). The question for the Court, then, is whether Dream Kitchen has sufficiently pleaded that MZ independently formed a "preconceived plan and unity of design and purpose" with Defendant Ibrahimov and/or Defendant Kitchen and Bath.[8] *Bay Tobacco*, 261 F. Supp. 2d at 499.

---

[7] The complaint also alleges the "[d]efendants' actions were willful and malicious" and that the plaintiff was "damaged in an amount to be proven at trial." *Id.* ¶¶ 56–57.

[8] Although a complaint alleging conspiracy must "clearly allege" with whom the named defendant conspired, *BHR Recovery Communities, Inc. v. Top Seek*, LLC, 355 F. Supp. 3d 416, 425 (E.D. Va. 2018), a conspiracy claim can survive notwithstanding the plaintiff's failure to name a party that is essential to the conspiracy as a party to the suit. *See, e.g., AWP, Inc. v. Commonwealth Excavating, Inc.*, No. 5:13-cv-31, 2013 WL 3830500, at *5 (W.D. Va. July 24, 2013) ("Watkins' participation in the conspiracy provides the multiplicity of actors necessary to state a claim for conspiracy. The analysis is not changed by the fact that Watkins is not named as a defendant in this case. It is axiomatic that not all members of a conspiracy must be named as parties to a lawsuit."); *see also Williams v. Dominion Tech. Partners, L.L.C.*, 265 Va. 280, 287 (2003) (state case went to a jury even

It has not. The complaint alleges nothing about who MZ is except that it "is a Virginia limited liability company with its principal office" in Arlington, Virginia. Dream Kitchen never describes a single action MZ took independently, what role it is alleged to have played in the conspiracy, or even what kind of services the company provides.

To state a claim for conspiracy, "the factual allegations must plausibly suggest agreement, rather than being merely consistent with agreement." *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011); *Dogs Deserve Better, Inc. v. Terry*, No. 3:14-cv-591, 2015 WL 1288324, at *4 (E.D. Va. Mar. 20, 2015). "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Society Without A Name*, 655 F.3d at 346 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *cf. Hum. Res. Inst. of Norfolk, Inc. v. Blue Cross of Virginia*, 498 F. Supp. 63, 65 (E.D. Va. 1980) (granting summary judgment in favor of the defendant where the plaintiff was "unable to elicit any evidence" of the "identity or participation" of unnamed co-conspirators who were essential to sustaining the conspiracy claim).

In *Society Without A Name*,[9] "the complaint allege[d] nothing more specific than statements that the 'Does and the City entered into a conspiracy,' that they

---

though an essential alleged conspirator "was not named as a defendant in the suit"); *Flinders v. Datasec Corp.*, 742 F. Supp. 929, 935–36 (E.D. Va. 1990) ("unnamed . . . employees are eligible co-conspirators").

[9] Even though *Society Without A Name* dealt with a claim under 42 U.S.C. § 1985(3) (conspiracy to interfere with civil rights), whereas Dream Kitchen's claims are for

15

had a 'meeting of the minds that they would act in concert with VCU' to pressure the Daily Planet to relocate to Oliver Hill Way, and that Homeward was created as part of the conspiracy and . . . became part of the conspiracy." 655 F.3d at 346–47 (internal citation and punctuation omitted).

That is exactly the kind of conclusory language Dream Kitchen uses in its complaint: Dream Kitchen alleges that Ibrahimov, Kitchen and Bath, and MZ "combined, associated, agreed, and/or mutually undertook together" for a specific purpose and that they "mutually undertook" specific actions. ECF No. 1 at ¶¶ 54–55. Without any allegation as to "specific communications" between the alleged conspirators or "the manner in which any such communications were made," Dream Kitchen's complaint fails to plead an essential element of conspiracy. *Society Without a Name*, 655 F.3d at 347.

Pleading that the alleged conspirators had a common purpose is not enough to allow the Court to infer an agreement that would survive the motion to dismiss. In *Society Without A Name*, the plaintiff alleged that "a conspiracy had existed since at least 1995" for the specific purpose of reducing the visibility of marginalized people in the majority-white neighborhoods of downtown Richmond, and that the alleged conspirators formed a nonprofit organization specifically to "pressure the Daily Planet to relocate to Oliver Hill Way." 655 F.3d at 346–47. But the Fourth Circuit found that was not enough to satisfy the "required element of a conspiracy of

---

Virginia statutory and common law conspiracy, the Fourth Circuit's decision was based on the pleading standard under *Twombly*, which applies equally to the instant case.

16

two or more persons," because the complaint's description of the alleged *agreement* was conclusory. 655 F.3d at 344, 346–47.

Dream Kitchen may have alleged "parallel conduct" between MZ and either or both of Defendants Ibrahimov and Kitchen and Bath, but its conclusory allegations about an "agreement at some unidentified point" are insufficient. *Society Without A Name*, 655 F.3d at 346. The plaintiff has not alleged facts to sufficient to raise its conspiracy claim "above the speculative level." *Twombly*, 550 U.S. at 555. Accordingly, Count Five is dismissed.

### F. Dream Kitchen Fails to State a Claim of Common-Law Conspiracy.

"A civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, resulting in damage to the plaintiff." *Glass v. Glass*, 228 Va. 39, 47, 321 S.E.2d 69, 74 (1984).

Dream Kitchen's common-law conspiracy claim fails for the same reasons the statutory conspiracy claim fails: Defendants Ibrahimov and Kitchen and Bath cannot form a conspiracy, and Dream Kitchen does not allege any non-conclusory facts as to either of those defendants' "specific communications" with MZ "or the manner in which any such communications were made." *Society Without A Name*, 655 F.3d at 347. Count Six is dismissed.

### G. The Court Lacks Subject-Matter Jurisdiction Over Count Three.

Because the Court has concluded that Dream Kitchen fails to state a claim under Counts One, Two, Four, Five, and Six, the only claim that remains active is

17

Count Three—a state-law claim under the Virginia Computer Crimes Act. Thus, the Court now lacks subject-matter jurisdiction under 28 U.S.C. § 1331.

There is no diversity jurisdiction under 28 U.S.C. § 1332 because the parties are not completely diverse. *See* ECF No. 1 ¶¶ 5–6.

Accordingly, Count Three is dismissed for lack of subject-matter jurisdiction.

### H.  Leave to Amend

At the hearing on the motion to dismiss (ECF No. 37), the plaintiff requested leave to amend its complaint if the Court granted the defendants' motion. Pursuant to Fed. R. Civ. P. 15(a)(2), "[t]he Court should freely give leave [to amend] when justice so requires." "The law is well settled 'that leave to amend should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Wallace v. City of Hampton*, 2:15cv126, 2015 WL 13856526, at *2 (E.D. Va. Aug. 25, 2015) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (emphasis in original).

The Court, having considered those factors, finds that granting leave to amend is appropriate under the circumstances. Accordingly, the plaintiff's request is granted.

### III. CONCLUSION

For the reasons explained above, Defendants Ibrahimov and Kitchen and Bath's Motion to Dismiss (ECF No. 19) is **GRANTED IN PART.**

Counts One, Two, Four, Five, and Six are **DISMISSED** for failure to state a claim.

Count Three is **DISMISSED** for lack of subject-matter jurisdiction.

The defendants' motion in the alternative to transfer is **DENIED AS MOOT.**

The Plaintiff's oral motion for leave to amend the complaint is **GRANTED**. Any amended complaint must be filed within 14 days from the date of this Memorandum Opinion and Order.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ JKW
Jamar K. Walker
United States District Judge

Norfolk, Virginia
June 21, 2023