## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DREAM KITCHEN & BATH SHOP, LLC,

     Plaintiff,

     v.

KITCHEN AND BATH SHOP, LLC, et al.,

     Defendants.

Case No. 2:22-cv-184

## MEMORANDUM OPINION & ORDER

Before the Court is a motion to dismiss the Amended Complaint, or in the alternative, to transfer venue, filed by Defendants Kitchen and Bath Shop, LLC, Panah Ibrahimov, and MZ Digital Marketing, LLC. ECF No. 43. The Court has reviewed the Amended Complaint, fully considered all arguments by the parties, and determined there is no need to hold a hearing on the motion. *See* Fed. R. Civ. P. 18; E.D. Va. Civ. R. 7(J). For the reasons stated herein, the motion to dismiss is **GRANTED**, the Amended Complaint is **DISMISSED**, and the motion in the alternative to transfer is **DENIED AS MOOT**.

## I.      BACKGROUND

### A.      Procedural History

On April 29, 2022, the plaintiff filed a complaint that included six claims: (1) violation of the federal Computer Fraud and Abuse Act, (2) false advertising in violation of the Lanham Act, (3) violation of the Virginia Computer Crimes Act, (4)

tortious interference with business expectancy, (5) Virginia statutory business conspiracy, and (6) Virginia common law conspiracy. Defendants Ibrahimov and Kitchen and Bath Shop, LLC filed a motion to dismiss all six counts for failure to state a claim or, in the alternative, to transfer the case to the United States District Court for the Eastern District of Virginia, Alexandria Division. On June 13, 2023, this Court held a hearing on the motion to dismiss. ECF No. 37. In a June 21, 2023 Memorandum Opinion and Order, the Court dismissed Counts One, Two, Four, Five, and Six for failure to state a claim and the remaining claim (Count Three) for lack of subject-matter jurisdiction but gave the plaintiff leave to amend the complaint. ECF No. 39.

The plaintiff filed an amended complaint on July 5, 2023. ECF No. 41. The Amended Complaint includes only five claims: (1) violation of the federal Computer Fraud and Abuse Act, (2) false advertising in violation of the Lanham Act, (3) violation of the Virginia Computer Crimes Act, (4) Virginia statutory business conspiracy, and (5) Virginia common law conspiracy. The defendants filed a motion to dismiss the Amended Complaint, or in the alternative, to transfer venue. ECF No. 43. The motion has been fully briefed and is ripe for disposition. ECF Nos. 45 (opposition), 46 (reply).

### B.    Names of Relevant Entities

The facts of this case are difficult to follow, for two reasons: First, the dispute involves two companies with similar names, whose predecessors in interest had even more similar names; and second, the plaintiff's pleadings use one of those

names ambiguously, in a manner that is misleading. To render a clear opinion, it is necessary for the Court to reframe the facts the plaintiff alleges, using monikers that make sense.

At this stage, the Court assumes as true the facts alleged in the Amended Complaint and the exhibits attached thereto.

Mehmet Ozturk owned the "Virginia Beach Branch" (ECF No. 41-1 at 2) of a "franchised kitchen and bath renovation business" (ECF No. 41 ¶ 10). The Court will refer to Ozturk's business as "the franchise."

The franchisor was Kitchen and Bath Shop, LLC—one of the defendants, which the Court will call "the defendant franchisor" or "the franchisor." *See* ECF No. 41 ¶ 14.

Ilyas Celik incorporated a company called "Kitchen and Bath *Shops*, LLC." ECF No. 41-1 at 1 (emphasis added to distinguish from the franchisor, Kitchen and Bath *Shop*, LLC). On December 3, 2020 (*id.* at 4), Celik purchased Ozturk's "ongoing . . . business" (ECF No. 41 ¶ 10) and converted it to an independent shop. The Court will refer to the business during the phase immediately after its purchase as "Celik's business."

After Celik's business was created, the franchisor company "was acquired by [Defendant] Ibrahimov." ECF No. 41 ¶ 13. On January 22, 2021, Defendant Ibrahimov, through counsel, sent a letter to Celik demanding that Celik "cease and desist use of th[e] Kitchen and Bath trademark." ECF No. 41-3 at 1. Eight days later, Celik incorporated a new company called "Dream Kitchen and Bath Shop,

LLC." ECF No. 41-2. Dream Kitchen and Bath Shop, LLC is the named plaintiff in this case. Therefore, the Court will refer to that company, which did not exist until January 30, 2021, as "the plaintiff."

### C.    Events Alleged

The franchisor, through third-party services provided by Defendant MZ Digital Marketing, managed information technology for all its affiliates, including Ozturk's franchise. *See* ECF No. 41 ¶ 14. Defendant MZ Digital Marketing changed the password to the franchise's email (vabeach@kitchenandbathshop.com). ECF No. 41 ¶ 17. The change prevented the plaintiff from "finaliz[ing] contracts for work already submitted to clients." *Id.* That work was "redirected" to the defendant franchisor. *Id.* ¶ 18.

The franchise "set up and operated a Google Business account." ECF No. 41 ¶ 19; *see* Part I.D., *infra*. The plaintiff later "changed the name of the business" on the account. ECF No. 41 ¶ 20.

The defendants[1] "submit[ed] a request to Google to take ownership" of the Google Business account, "claiming to be the [] owner" of the franchise. ECF No. 41 ¶ 22. The plaintiff received notice of the request and rejected it. *Id.* ¶ 22–23. The defendants then set up a new Google Business account and asked Google to transfer customer testimonials to the new page. *Id.* ¶ 24. Google transferred 19 customer

---

[1] Here, the Court makes a reasonable inference. The Amended Complaint alleges Defendant MZ Digital Marketing, the franchisor's email service (ECF No. 41 ¶ 14), submitted the request to Google. *Id.* ¶ 22. The Court infers that either Defendant Ibrahimov or the defendant franchisor submitted the request, using Defendant MZ Digital Marketing's services.

testimonials from the page set up by the franchise, to the page set up by the franchisor. *Id.* ¶ 25.[2]

### D.    Ambiguity of "Dream Kitchen"

The Amended Complaint purports to use "Dream Kitchen" to refer only to "Plaintiff Dream Kitchen & Bath" (ECF No. 41 at 1). However, at times, actions alleged to have been taken by "Dream Kitchen" could not have been taken by the company created on January 30, 2021. For the reasons explained herein, the Court concludes that "Dream Kitchen" sometimes refers to the franchise—a predecessor to the plaintiff company, and an "affiliate[]" of the defendant franchisor. *Id.* ¶ 17.

At paragraph 19, the Amended Complaint states:

> Dream Kitchen, prior to the acquisition of Kitchen and Bath by Ibrahimov, set up and operated a Google Business account (the "Dream Kitchen Google Account") under the then-current business name of "Kitchen and Bath Shop Virginia Beach." The Dream Kitchen Google Account was utilized by Dream Kitchen for the purposes of advertising and marketing, as well as allowing customers to post reviews, allowing Dream Kitchen to boost its marketplace presence as well as providing a platform for customers to provide feedback on its services.

This framing suggests that the plaintiff created the Google Business account at issue. However, "Kitchen and Bath Shop Virginia Beach" (the franchise) ceased to operate on December 3, 2021, when Cerik purchased the business under a different corporate name. ECF No. 41-1 at 2. Therefore, "Dream Kitchen" the *plaintiff* did not

---

[2] The Amended Complaint also alleges an incident in which Defendant Ibrahimov "baselessly asserted that [he] had a United States Trademark registration for "Kitchen and Bath Shop." ECF No. 41 ¶ 16; *see id.* ¶¶ 30–39. Because the allegations related to this incident do not form the basis of any claim asserted in the Amended Complaint, the Court dispenses with discussing those facts.

5

exist at the time the name "Kitchen and Bath Shop Virginia Beach" was "current," and the plaintiff could not have "set up" the Google Business account. ECF No. 41 ¶ 19. If the Google Business account was created by the entity that operated the business at the time the name "Kitchen and Bath Shop Virginia Beach" was "current," then the *franchise* created the account. Thus, the Court concludes that at least in paragraph 19 of the Amended Complaint, "Dream Kitchen" refers to the franchise, not the plaintiff.

At first glance, it appears this ambiguity may be merely an artifact of a poorly drafted pleading. However, closer inspection reveals that using "Dream Kitchen" to refer to both (a) the plaintiff and (b) the franchise it replaced serves to obscure the relationships between the parties in a way that seems to the Court to be deliberate.

At paragraph 25, the Amended Complaint alleges that the defendants obtained "control of customer reviews for work accomplished by Dream Kitchen and not by Defendants and/or the business utilizing the 'Kitchen and Bath Shop Virginia Beach' Google business account." An initial look at this sentence leaves the impression that the defendants misappropriated reviews the *plaintiff's* customers wrote. But a closer reading reveals that the pleading asserts something entirely different. The *plaintiff* was "the business utilizing the Kitchen and Bath Shop Virginia Beach Google business account." ECF No. 41 ¶ 25 (punctuation omitted); *see id.* ¶ 19–20. If "work accomplished by Dream Kitchen" is "*not* [work accomplished] by the [the plaintiff]" (*id.* ¶ 25 (emphasis added)), then "Dream

6

Kitchen" in paragraph 25 does not mean "the plaintiff." But if "Dream Kitchen" in paragraph 25 refers to the *franchise*, as it does in paragraph 19, then the Amended Complaint makes sense, alleging the defendant franchisor obtained "control of customer reviews for work accomplished by [the franchise] and not by . . . [the plaintiff]." *Id.* ¶ 25.

As this Memorandum Opinion and Order details, the Amended Complaint's use of the name "Dream Kitchen" to refer to both the plaintiff and the franchise, which was a subsidiary of the defendant franchisor, creates questions about the relationships between the parties that the Amended Complaint does not answer. Those questions deal primarily with what authority, if any, the defendant franchisor had over data produced by the franchise's customers.

## II.    LEGAL STANDARD

When a defendant moves to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6), the court must determine whether the plaintiff's complaint "alleges sufficient facts to raise a right to relief above the speculative level" and "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts begin by "identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Then, courts determine whether the plaintiff has "provide[d] the grounds of [their] entitlement to relief" with more than a recital of the elements of the cause of action. *Iqbal*, 556 U.S. at 663; *Twombly*, at 545.

The court's review is generally "limit[ed]" to the facts alleged in the complaint itself, which must be viewed "in the light most favorable to the plaintiff." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). However, the plaintiff bears the burden to allege sufficient facts to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. Therefore, the Court must avoid making any inference that is "not plausible in light of [an] 'obvious alternative explanation.'" *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 588 (4th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567).

## III.  ANALYSIS

### A.  The Amended Complaint Fails to State a Claim Under the Federal Computer Fraud and Abuse Act or the Virginia Computer Crimes Act.

The Computer Fraud and Abuse Act ("CFAA"), codified at 18 U.S.C. § 1030(g), is "primarily a criminal statute designed to combat hacking." *WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 206 (4th Cir. 2012). Nevertheless, it provides a civil remedy to "any person who suffers damage or loss by reason of a violation of [the CFAA]." 18 U.S.C. § 1030(g). To maintain a civil action, a CFAA plaintiff must allege all the elements of one of the crimes outlined in the statute, as well as one of the harms laid out in subsections (c)(4)(A)(i)(I)–(V). *Id.*

The plaintiff pleads its claim under 18 U.S.C. §§ 1030(a)(4) and (a)(5)(C). ECF No. 41 at 9. To state a claim under subsection (a)(4), a plaintiff must show that the defendant "knowingly and with intent to defraud, accesse[d] a protected computer without authorization, or exceed[ed] authorized access, and by means of

8

such conduct further[ed] the intended fraud and obtain[ed] anything of value." 18 U.S.C. § 1030(a)(4). Subsection (a)(5)(C) requires a showing that the defendant "knowingly cause[d] the transmission of a program, information, code, or command, and as a result, . . . intentionally accesse[d] a protected computer without authorization, . . . caus[ing] damage and loss." *Id.* at (a)(5)(C).

The Virginia Computer Crimes Act ("VCCA") creates a civil cause of action for "[a]ny person whose property or person is injured by reason of a violation of [the VCCA] or by any act of computer trespass set forth in subdivisions A 1 through A 8 of § 18.2-152.4 regardless of whether such act is committed with malicious intent." Va. Code § 18.2-152.12(A). Dream Kitchen does not specify which statutory provision it is proceeding under. However, the language of the complaint almost identically tracks Va. Code § 18.2-152.4 (A)(1), (3), and (6). *Compare* ECF No. 41 ¶ 51 *with* Va. Code § 18.2-152.4(A)(1); *compare* ECF No. 41 ¶ 52 *with* Va. Code § 18.2-152.4(A)(3); *compare* ECF No. 41 ¶ 53 *with* Va. Code § 18.2-152.4(A)(6). Similar to claims under the CFAA, claims under the VCCA require pleading that the defendant took the complained-of action "without authority." Va. Code Ann. § 18.2-152.4(A).

Resolution of the motion to dismiss as to the two computer crimes claims turns on the plaintiff's failure to sufficiently allege that the defendant's actions were unauthorized.

### i.    *Authorization*

"A person is 'without authority'" within the meaning of the VCCA when they "know[] or reasonably should know" that they have "no right, agreement, or permission or act[] in a manner knowingly exceeding such right, agreement, or permission." Va. Code § 18.2-152.2.

"The CFAA does not define 'authorization.'" *WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 204 (4th Cir. 2012). However, the Fourth Circuit has adopted a "literal[] and narrow[]" reading of "without authorization" and "exceeds authorization" that limits application of the terms "to situations where an individual accesses a computer or information on a computer without permission." *Id.* at 203 (citing *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (en banc); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134–35 (9th Cir. 2009)). The Supreme Court blessed that approach in *United States v. Van Buren*, when it decided that the CFAA's "'exceeds authorized access' clause applies only to those who obtain information to which their computer access does not extend, not to those who misuse access that they otherwise have." 141 S. Ct. 1648, 1653, (2021). The result is a "gates-up-or-down inquiry" under which "one either can or cannot access a computer system, and one either can or cannot access certain areas within the system." *Id.* at 1658–59.

To fully understand the contours of the gates-up-or-down inquiry, it is useful to examine the rubric's application in the case law.

In *WEC*, the Fourth Circuit concluded that "an employee who allegedly downloaded his employer's proprietary information, resigned, and then used that information on behalf of a competitor *did not* access his employer's computer 'without authorization,'" so the court "found no liability under the CFAA." *Carfax, Inc. v. Accu-Trade, LLC*, No. 1:21-cv-361, 2022 WL 657976, at \*12 (E.D. Va. Mar. 4, 2022) (summarizing *WEC*, 687 F.3d at 207) (emphasis in *Carfax*). The court's decision turned on the meaning of "authorized access," and the foundation of the defendant's authorization was his employment with the plaintiff company. Specifically, "the company . . . authorized [the defendant's] access to the company's intranet and computer servers" "[w]hen [the defendant] worked for WEC]." 687 F.3d at 202.

The CFAA defendant in *United States v. Steele* "spent nine months secretly logging in to the email server of his former employer, gaining access to confidential and proprietary information related to its government contract bids." 595 F. App'x 208, 209 (4th Cir. 2014) (unpublished). The Fourth Circuit cited three factors that contributed to its conclusion that the defendant's access was unauthorized: (1) the defendant accessed the information after leaving the company; (2) the company "took steps to revoke [the defendant's] access to company information," and (3) the defendant "recognized that his resignation effectively terminated any authority he had to access the [plaintiff's] system thereafter." *Id.* at 211; *see also Carfax*, 2022 WL 657976, at \*12 (discussing *Steele* as an example of what the Fourth Circuit looks for to determine whether "the gates were up at the time the information was

11

accessed"). The *Steele* court also noted that the defendant acknowledged a change in his right to access the employer's data and "promis[ed] in his resignation letter that he would not attempt to access the system" after he left the company. 595 F. App'x at 211.

In *Tech Sys., Inc. v. Pyles*, a company sued a former employee for, *inter alia*, accessing her company cell phone after she was fired. The court found that the defendant's "authorization to access the [cell phone] terminated with her employment." 630 F. App'x 184, 187 (4th Cir. 2015) (unpublished).

Taken as a whole, the Fourth Circuit's jurisprudence on unauthorized access places dispositive value on the status of a CFAA defendant's legal relationship with the owner of the affected data: The "gates" to an employer's data come "up" the moment the employer-employee relationship is severed. *Van Buren*, 141 S. Ct. at 1658.

The court of appeals has not, so far, decided a CFAA case in which data *ownership* is at issue, but courts in this district have. In *Estes Forwarding Worldwide, LLC v. Cuellar*, the defendant was accused of gaining unauthorized access to an account the defendant himself had created. 239 F. Supp. 3d 918 (E.D. Va. 2017). Because the defendant "did not create the account unilaterally, but rather did so within the scope of his employment for, and at the direction of [the plaintiff]," the court concluded "the account belonged to [the plaintiff company]," who merely "authorized its employees to use it." *Id.* at 925. Similarly, the court in *Good 'Nuff Garage, LLC v. McCulley* concluded that "[i]f the employer owns the

account," termination of the employment relationship results in cessation of authorization to access the employer's data, "even when the terminated employee was the person who first created the credentials necessary for access." No. 3:21-cv-571, 2022 WL 4485810, at *12 (E.D. Va. Sept. 26, 2022).

### i.    The CFAA claim

The plaintiff alleges that the defendants, "inten[ding] to defraud" the plaintiff, asked Google to transfer customer reviews from the Google Business page "set up and operated" by the franchise (ECF No. 41 ¶ 19; *see* Part I.D., *supra*), to the franchisor's page. 18 U.S.C. § 1030(a)(4).

To determine the sufficiency of the CFAA claim, the Court looks to whether the Amended Complaint plausibly alleges that the defendants "obtain[ed] information to which their computer access does not extend." *Van Buren*, 141 S. Ct. at 1653. That analysis would be relatively simple under the Fourth Circuit's without-authorization jurisprudence if the defendant had "worked for" the plaintiff, *WEC*, 687 F.3d at 202, but here, data were transferred from an account created by a franchisee to an account created by the franchisor. Still, the instant case involves parties to an evolving business relationship. Thus, while *Steele* is not binding precedent, the Court is persuaded that the factors outlined therein shed light on the sufficiency of the pleading as to the authorization element.

13

1.    *The plaintiff alleges that the franchise relationship was severed but not what effect that had on the parties' authority to access the relevant data.*

In *Steele,* the Court noted that the defendant accessed the plaintiff-employer's data after leaving the company. 595 F. App'x at 209–10. The facts are similar here, where the franchise relationship was severed before the defendants made their request to Google. However, whereas in *Steele* there was no dispute that the employer owned the data, here it is unclear which entity owned the Google Business data and possessed the right to authorize access thereto—the franchisor, which licensed the name of the business; or the plaintiff company, which took the franchise's place.

2.    *The plaintiff alleges it attempted to deny the defendants access to the Google Business data.*

In *Steele*, the plaintiff-employer "took steps to revoke [the defendant's] access to company information." 595 F. App'x at 211. The Amended Complaint alleges that the plaintiff attempted to deny the defendants access to the information, in that it states the plaintiff "received notice" that the defendants had "submit[ed] a request to Google to take ownership" of the Google Business account created by its former franchise, and that the plaintiff "den[ied] the transfer." ECF No. 41 ¶¶ 22–23.

3.    *The plaintiff does not allege what rights—if any—survived the sale of the franchise.*

In *Steele*, the defendant "recognized that his resignation effectively terminated any authority he had to access the [plaintiff's] system thereafter." 595 F. App'x at 211. In the instant case, the plaintiff provides no such proof of

14

acknowledgement. Here, the record contains no agreement in which the defendant franchisor promised to relinquish control over marketing materials used to promote its Virginia Beach location after the business was sold to Cerik and became independent. Nor does the plaintiff present the franchise agreement between Ozturk and the defendant franchisor, which might have shed light on what rights, if any, the defendants retained after termination of the franchise.

The Court finds persuasive the reasoning in *Estes*, where the employer owned the account an employee created, because the employee created the account "within the scope of his employment for, and at the direction of the employer." 239 F.Supp. 3d at 925. If the franchise created the Google Business page because the franchisor directed it to, then the franchisor might own the data the plaintiff claims the franchisor stole. And if the franchisor owns the data, then under the persuasive reasoning in *Good 'Nuff Garage*, termination of the franchise might have resulted in the *plaintiff* losing authorization to access the data, even though its predecessor, the franchise, "first created the credentials necessary for access." 2022 WL 4485810, at *12. That is a problem for the plaintiff, because the Amended Complaint never alleges who owned the data and provides no detail about what rights and liabilities, if any, survived the sale of the franchise.

Perhaps even more striking is the plaintiff's failure to allege when the relevant customer reviews were created. If the reviews were written after Cerik bought Ozturk's business and converted the franchise into an independent shop, then, absent an agreement, the franchise company would likely have no ownership

interest in the disputed data. But the plaintiff makes no allegations as to the dates any customer reviews were written. Moreover, the Amended Complaint appears to be deliberately drafted to obscure the fact that the reviews were not written about services the *plaintiff* provided. The pleading states that after the defendants' request to transfer customer reviews, the defendants obtained "control of customer reviews for work accomplished by Dream Kitchen and not by Defendants and/or the business utilizing the 'Kitchen and Bath Shop Virginia Beach' Google business account." ECF No. 41 ¶ 25. As the Court has already explained, a close reading reveals that the Amended Complaint alleges that the defendant franchisor took control of reviews written about *an entity other than the plaintiff*. *See* Part I.D., *supra*. It is possible that the reviews at issue were written about Cerik's business before it became "Dream Kitchen," but the Court is left wondering why, if that were the case, the plaintiff did not say so.

In light of all the allegations that *are* included in the Amended Complaint, the most reasonable explanation for the defendants' request to Google is that the reviews at issue were posted by customers of the franchise and that, when the plaintiff refused to give up control of the franchise's marketing material (*see* ECF No. 41 ¶ 23 (plaintiff denied the defendants' request to "take ownership of the . . . account"); *cf.* ECF No. 41-3 at 1 (alleging the plaintiff continued using the franchised name and logo)), the defendants simply asked Google to associate the reviews gathered during the franchise period with the franchise company instead of

with a separate, independent business. *Cf.* ECF No. 41 ¶ 22 (entity making the request to Google claimed to be "the business owner" of the then-defunct franchise).

In the face of that "obvious alternative explanation," the Court must not infer in the plaintiff's favor (i) when the customer reviews were posted or (ii) which companies may have had an ownership interest in the data at the time they were moved. *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567; *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 588 (4th Cir. 2015) (finding that an inference that ignores the "obvious alternative explanation . . . . cannot be squared with the Supreme Court's command that a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully"). Absent such an inference, the CFAA claim fails.

The plaintiff alleges that the defendants' access to the Google Business data was "without authorization" (ECF No. 41 ¶ 43), "without any authorization" (*id.* ¶ 24), and "unauthorized" (*id.* ¶ 29, 41). But "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal punctuation and citations to *Twombly* omitted).[3]

---

[3] Although the Amended Complaint makes no specific allegation that the defendants "exceed[ed] authorized access," 18 U.S.C. § 1030(a)(4), it does cite subsection (a)(4), which includes exceeding authorized access as an alternate theory of liability; therefore, the Court has considered both options—unauthorized access and exceeding authorized access—when assessing the sufficiency of the pleading.

The plaintiff's bald allegations that the defendants were not authorized to ask Google to move customer reviews from one business's page to another (ECF No. 41 ¶ 24, 29, 41, 43) do not provide sufficient factual grounds to assert a plausible claim under the CFAA, given the Fourth Circuit's interpretation of "without authorization."

### ii.    The VCCA

In its Memorandum Opinion and Order on the motion to dismiss the original complaint, the Court concluded that the complaint adequately stated a claim for relief under at least Va. Code § 18.2-152.4(A)(3); on the basis of the allegations about the defendants "redirecting emails." ECF No. 39 at 9–10.[4] However, in the Amended Complaint, the plaintiff added more detail to its allegations about the email incident. The new allegations raise an "obvious alternative explanation" that was obscured in the original complaint, which makes the pleading insufficient as to the authorization element. *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567; *McCleary-Evans*, 780 F.3d at 588.

The portion of the Amended Complaint devoted to Count Three merely recites the elements under those three subsections. ECF No. 41 ¶¶ 51–55. However, the factual background section, which is incorporated into Count Three by reference (*id.* ¶ 50), alleges two incidents that could conceivably be the intended basis for the plaintiff's claim in Count Three. First, Count Three could be based on migration of

---

[4] Because that conclusion resulted in preserving the claim, the Court declined to opine on whether Dream Kitchen stated a claim under any other subsection of the VCCA. ECF No. 39 at 9.

18

customer reviews from one Google Business account to another. ECF No. 41 ¶¶ 19–29. As explained in Part III.A.i., *supra*, the Court cannot infer that the defendant franchisor lacked authorized access to the franchisor's data.[5] Therefore, the Amended Complaint fails to sufficiently allege that the Google Business data were moved "without authority." Va. Code Ann. § 18.2-152.4(A).

Alternatively, the plaintiff alleges the defendants "seize[d] without authorization Dream Kitchen's business email account, redirecting emails as well as interfering with Dream Kitchen's customers' ability to contact Dream Kitchen as well as finalize contracts for work already submitted to clients." *Id.* ¶ 17. Here again, the plaintiff fails to allege lack of authority, because it does nothing to refute the obvious conclusion that the defendant franchisor controlled the email account and simply revoked access once the franchise was terminated.

The Amended Complaint states:

> At all times pertinent to this matter, Kitchen and Bath and Ibrahimov utilized the third-party services provided by MZ Digital to handle information technology for Kitchen and Bath and related companies such as Dream Kitchen. Those services directed by Kitchen and Bath and performed by MZ Digital included setting up and handing the email services for Kitchen and Bath, *including the email services for Dream Kitchen.*

ECF No. 41 ¶ 14 (emphasis added). The Amended Complaint goes on to allege that Defendant MZ Digital Marketing, on behalf of the other two defendants, "changed . . . Dream Kitchen's password for its email (vabeach@kitchenandbathshop.com)."

---

[5] The meanings of 'authorization' within the CFAA and 'authority' within the the VCCA are not identical, but they are similar enough that the Amended Complaint fails to allege each of the elements, for the same reason.

*Id.* ¶ 17. The plaintiff alleges this action resulted in the defendants "redirecting emails as well as interfering with Dream Kitchen's customers' ability to contact Dream Kitchen [and] finalize contracts for work already submitted to clients." *Id.* The plaintiff further alleges that "work stolen by Defendants in this manner was redirected to a competing Virginia Beach kitchen and bath store established by Ibrahimov and Kitchen and Bath." *Id.*

Put more simply, the Amended Complaint states that the defendants created an email account for Ozturk's franchise, then changed the password to that account after Cerik bought the business and severed it from the franchisor. Surely a franchisor has authority to revoke access to a franchise's email account after the franchise relationship ends, so the plaintiff does not allege a claim based on lack of authority that is "plausible on its face." *Twombly*, 550 U.S. at 555.

To refute that obvious conclusion and instead allege that the defendants' conduct was "without authority," Va. Code Ann. § 18.2-152.4(A), the plaintiff would have had to, at least, allege that Cerik's business—not the franchise bearing the name on the email account—created the "contracts for work already submitted to clients." ECF No. 41 ¶ 17. The plaintiff did not so allege.[6]

---

[6] The plaintiff refers to parties to the emails as "Dream Kitchen's customers." ECF No. 41 ¶ 17. However, as explained in Part I.D., *supra*, that phrase is ambiguous in the Amended Complaint, referring both to the plaintiff (*e.g.*, ECF No. 41 ¶ 12) and to the franchise (*e.g.*, *id.* ¶ 19). While the Court is bound to resolve ambiguities in favor the plaintiff, it must do so using reasonable inferences. It would be unreasonable to infer that "[the plaintiff's] customers" wrote the relevant reviews, because (1) due to consistent ambiguity in the Amended Complaint, "Dream Kitchen" could just as easily mean the franchise as it could the plaintiff company;

Therefore, the Amended Complaint fails to allege that the defendants lacked "authority" within the meaning of Va. Code Ann. § 18.2-152.4(A) to request the data transfer.

Because the plaintiff fails to allege unauthorized access as to either of its computer crimes claims, Counts One and Three are dismissed.

## B. The Amended Complaint Fails to State a Claim for False Advertising Under the Lanham Act

The Fourth Circuit has interpreted the elements of a false advertising claim under 15 U.S.C. § 1125:

> A plaintiff asserting a false advertising claim under the Lanham Act must establish that: (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015).

As in Count One, the plaintiff asserts that the basis of its claim is the transfer of customer testimonials from the Google Business page associated with the plaintiff to the page associated with the defendant franchisor. ECF No. 41 ¶¶ 45–49. And as in Count One, the complaint fails to sufficiently allege that the

---

and (2) an obvious innocent alternative exists (*i.e.*, that franchise customers wrote the reviews), which the plaintiff has done nothing to refute.

relevant reviews were written by customers of the plaintiff company, as opposed to customers of its predecessor, the franchise.

The Amended Complaint states the "Defendants used *Dream Kitchen's customers'* testimonials to advertise for another, competing business" (ECF No. 41 ¶ 45 (emphasis added) and "falsely attribute[ed] the customer reviews to a direct competitor of *Dream Kitchen*" (*id.* ¶ 47) (emphasis added). But for the reasons explained in Part I.D., *supra*, the Court cannot conclude that "Dream Kitchen's customers" means the *plaintiff's* customers—it may just as well mean customers of the former franchise. If the defendants caused customer reviews about the independent plaintiff business to be posted on the Google Business page associated with the franchisor, that might constitute a "false or misleading description of fact or representation of fact in a commercial advertisement" about the franchisor. *Design Res.*, 789 F.3d at 501. However, if the transferred reviews were written by customers of the franchise—*i.e.*, before Cerik bought the business—then attributing those reviews to the store's franchisor may not have been misleading at all.

The plaintiff fails to provide even a general description of the contents of the reviews Google transferred to the defendants' page, much less copies of the reviews themselves. And despite the plaintiff's apparent effort to muddle the facts with convoluted language, the Amended Complaint alleges that the defendants obtained "control of customer reviews for work accomplished by [the franchise] and not by . . . [the plaintiff]." *See id.* ¶ 25; Part I.D., *supra*.

The Amended Complaint does not explain why attributing the franchise's work to the franchisor would be false or deceptive. Thus, despite conclusory allegations that "use of those testimonials were false and misleading statements of fact" (ECF No. 41 ¶ 46), and such use "deceived and/or likely deceived the consuming public in a material way" (*id.* ¶ 47), the plaintiff has failed to state a claim for false advertising under the Lanham Act that is plausible on its face. Accordingly, Count Two is dismissed.

### C.    The Amended Complaint Fails to State a Claim for Conspiracy.

"Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of . . . willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever" can be liable for business conspiracy under Va. Code § 18.2-499. Section 18.2-450 creates a civil cause of action for "[a]ny person who shall be injured in [their] reputation, trade, business or profession by reason of a violation of § 18.2-499." *See also DAG Petroleum Suppliers, L.L.C. v. BP P.L.C.*, 268 F. App'x 236, 243 (4th Cir. 2008) (outlining three elements).[7] Common-law conspiracy (Count Five) also requires "a

---

[7] In its Memorandum Opinion and Order on the motion to dismiss the original Complaint, the Court explained that the clear and convincing evidence standard that applies to Virginia statutory business conspiracy claims at trial does not apply here. ECF No. 39 at 13 n. 6. In the instant motion, the defendants preserve an objection to the Court's finding on this point. ECF No. 43 at 7 n. 2. The Court maintains that, at this stage, the plaintiff need only meet the *Twombly-Iqbal* plausibility standard to survive a motion to dismiss. *See Steele v. Goodman*, 382 F. Supp. 3d 403, 424 (E.D. Va. 2019) (denying a motion to dismiss a statutory business conspiracy claim under Va. Code §§ 18.2-499–450 because, even though the plaintiffs could not meet the "*ultimate* heightened pleading standard," they did meet "the plausibility standard applicable to [a] Rule 12(b)(6) motion") (emphasis

combination of two or more persons." *Glass v. Glass*, 228 Va. 39, 47, 321 S.E.2d 69, 74 (1984).

### i.    The Amended Complaint does not allege an agreement between 'two or more persons.'

The 'two or more persons' requirement "cannot be satisfied where an agent/principal relationship exists." *Rogers v. Deane*, 992 F. Supp. 2d 621, 635 (E.D. Va.), *aff'd*, 594 F. App'x 768 (4th Cir. 2014). "Under Virginia law, a corporation cannot conspire with its agents, nor can agents of a corporation, acting within the scope of their agency, conspire together." *Phoenix Renovation Corp. v. Rodriguez*, 258 F. App'x 526, 539 (4th Cir. 2007) (unpublished) (citing *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 386–87 (1996)); *Fox v. Deese*, 234 Va. 412, 362 S.E.2d 699, 708 (1987)).

In its Memorandum Opinion and Order on the defendants' motion to dismiss the original Complaint, the Court explained that "a common purpose between Defendants Ibrahimov and Kitchen and Bath Shop, LLC cannot form the basis for [a conspiracy]," and therefore, the plaintiff's conspiracy claims turned on its allegations as to the role of Defendant MZ Digital Marketing. ECF No. 39 at 14 (internal citations omitted); *see* ECF No. 41 ¶ 7 (identifying Defendant Ibrahimov as an agent of Defendant Kitchen and Bath Shop, LLC)). But whereas the original Complaint pleaded too little as to the third defendant (ECF No. 39 at 14 (noting the plaintiff "never describe[d] a single action Defendant MZ Digital Marketing took

---

added). However, because the Amended Complaint fails to meet that lower standard, the conspiracy claims would be dismissed regardless of whether a heightened pleading standard applies.

independently, what role it is alleged to have played in the conspiracy, or even what kind of services the company provides"), the Amended Complaint provides detail that defeats the claim on different grounds.

Virginia law defines "agency" as "the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the agreement by the other so to act." *Perry v. Scruggs*, 17 F. App'x 81, 89 (4th Cir. 2001) (unpublished) (citing *Raney v. Barnes Lumber Corp.,* 81 S.E.2d 578, 584 (1954)). The Amended Complaint states that Defendants "Kitchen and Bath and Ibrahimov utilized the third-party services provided by MZ Digital to handle information technology for Kitchen and Bath and related companies such as Dream Kitchen." ECF No. 41 ¶ 14. Moreover, the Amended Complaint alleges that Defendant MZ Digital Marketing performed services *at the* "*direct[ion]*" of the other defendants. *Id.* (emphasis added). These statements clearly allege an agency relationship between Defendant MZ Digital Marketing and the other defendants—that Defendant MZ Digital Marketing "act[s] on [its codefendants'] behalf" *Perry*, 17 F. App'x at 89, "to handle information technology *for* [Defendant] Kitchen and Bath and related companies" (ECF No. 41 ¶ 14 (emphasis added)). Therefore, the Amended Complaint does not state a claim for conspiracy.[8]

_____

[8] The Court's holding on this point should not be taken to suggest that two companies can never form a conspiracy as long as one hires the other; such a rule would create a loophole whereby entities could evade liability for conspiracy by simply hiring their co-conspirators. Rather, the law is clear that "a corporation cannot conspire with its agents" when the agents are "acting within the scope of

### ii. The Amended Complaint fails to allege intent on the part of Defendant MZ Digital Marketing.

Even if it did not allege that Defendant MZ Digital Marketing is an agent of the other two defendants, the Amended Complaint would still fail as to Counts Four and Five, because it contains no well-pleaded allegation that Defendant MZ Digital Marketing "agreed . . . to undertake" the other defendants' alleged plan to injure the plaintiff's business or that it took any action "willfully and maliciously." Va. Code § 18.2-499.

The Amended Complaint is rife with bald assertions that the three defendants "combined" to do various things the plaintiff claims interfered with its business (*e.g.,* ECF No. 14 ¶¶ 17, 21), but none are sufficient to clear the pleading standard under *Iqbal.* 556 U.S. at 663; *Twombly*, at 545. And although the plaintiffs set forth some allegations in such a way as to suggest that Defendant MZ Digital Marketing acted on its own, without the direction of the other defendants (*e.g.*, ECF No. 41 ¶ 22 ("MZ Digital marketing attempted to take exclusive control of Dream Kitchen's Google business account")), other allegations in the Amended Complaint belie that insinuation. In essence, the plaintiffs assert that an agent must necessarily share the malicious intent of its principal, merely because that principal took certain allegedly malicious actions using the agent's services. Without so much as an allegation that Defendant MZ Digital Marketing knew the content of the

their agency." *Rodriguez*, 258 F. App'x at 539. Fundamentally, the plaintiff fails to allege a conspiracy between the three defendants because it asserts that Defendant MZ Digital Marketing did nothing more than the email management that the other two defendants hired it to do.

emails Defendant Kitchen and Bath Shop, LLC was sending, such a theory is facially implausible. *Twombly*, 550 U.S. at 555.

Because a conspiracy cannot exist between Defendant Kitchen and Bath Shop, LLC and either of its agents, and because the plaintiff does not plausibly allege intent on the part of Defendant MZ Digital Marketing, the Amended Complaint fails to state a claim for conspiracy under Va. Code § 18.2-499 or Virginia common law. [9] Accordingly, Counts Four and Five are dismissed.

---

[9] "In Virginia, actions for common law civil conspiracy and statutory business conspiracy lie only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious." *Quill Ink Books, Ltd. v. Soto*, No. 1:19-cv-476, 2019 WL 5580222, at *4–5 (E.D. Va. Oct. 29, 2019) (quoting *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 215 (2014)) (internal punctuation omitted). Therefore, insofar as the plaintiff's conspiracy claims are based on an agreement to perform the acts alleged in Counts One through Three, the conspiracy claims are "viable only to the extent" one of its computer crime or false advertising claims "remain[s] viable." *Id.* "Because [none] of those claims have been sufficiently pleaded," *id.*, the plaintiff has also failed to state a claim for conspiracy to commit the actions alleged in Counts One through and Three.

## IV.    CONCLUSION

For the reasons explained above, the defendants' motion to dismiss for failure to state a claim (ECF No. 43) is **GRANTED.**

All five claims in the Amended Complaint (ECF No. 41) are **DISMISSED**.

The defendants' motion in the alternative to transfer is **DENIED AS MOOT.**

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

_____    /s/    _____
Jamar K. Walker
United States District Judge

Norfolk, Virginia
January 24, 2024